*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HOPE P., | ) | |
| | ) | Supreme Court No. S-15675 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-04-00372 CI |
| v. | ) | |
| | ) | |
| | ) | O P I N I O N |
| FLYNN G., | ) | |
| | ) | No. 7047 - September 4, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: John Parsi, K&L Gates LLP, Anchorage, for Appellant. Notice of nonparticipation filed by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

At issue in this appeal are parents' motions to modify their existing child custody arrangement. Without a hearing, the superior court denied the mother's motion but granted the father's motion for a temporary modification; later, with the parties' agreement, the court made the temporary order permanent. The mother argues on appeal that she was entitled to evidentiary hearings. She also appeals the superior court's denial

of her request that income be imputed to the father for purposes of calculating his child support obligation. We affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

Hope P. and Flynn G.[1] are the parents of two minor children and have been divorced since 2005. By the terms of a November 2010 custody order, they had joint legal and shared physical custody on an alternating weekly schedule as long as they both lived in the same community.

### A. Custody Modification Motions

In June 2012 Flynn resigned from his job after nine years as a journeyman telecommunications technician with the Matanuska Telephone Association (MTA). He worked for Chugach Power in Anchorage until December 2012, then in April 2013 he entered an apprenticeship program to become an inside wireman electrician. The program takes about five years to complete. It began with two months of classroom work; then, from June through October 2013, Flynn was employed on the North Slope. This temporary job required that he be out of town for four or five weeks at a time. Because the custody order granted Hope a right of first refusal, which she exercised, her custody time increased while Flynn was away working.

In August 2013 Hope moved for a permanent modification of physical custody and requested an evidentiary hearing. She asserted that the 50/50 custody schedule provided by the 2010 order was no longer realistic given Flynn's apprenticeship and his job on the North Slope, that this was a substantial change in circumstances, and

---

[1] Pseudonyms are used to protect the privacy of the family.

that the custody order should be modified to "accurately reflect the parties' current arrangement."[2]

In September 2013 Flynn filed his own motion to modify physical custody, though he requested only a temporary change. He alleged that he was having financial and logistical difficulties transporting the children to two different schools with different start and end times. He proposed that Hope have physical custody of the children during the school week, that he have three weekends of visitation per month, and that this schedule be in place only during the 2013/14 school year, reverting to the alternating-week schedule in June 2014.

Hope agreed with Flynn's proposal that she have custody during the school year, but she opposed his request that the modification be only temporary, and she disagreed with the way he defined the weekends.[3]

The superior court ruled on the parties' modification motions in October 2013. It denied Hope's motion without holding an evidentiary hearing, reasoning that neither "the change in [Flynn's] work schedule" nor "the fact that [Flynn] ha[d] changed jobs itself" was a substantial change in circumstances. But the court granted Flynn's motion for a temporary modification, finding that "the difficulties of driving the children to school . . . is a change in circumstances." The essential elements of the temporary order were that Hope would have physical custody of the children during the school week and Flynn would have custody three weekends out of every four. The court

---

[2]     *See* AS 25.20.110(a) (stating that custody award "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child").

[3]     Flynn proposed that he have three weekends of visitation a month; Hope proposed that he have two and a half (the half weekend ending at noon on Saturday). Flynn proposed that his weekend custody last until Monday morning; Hope proposed that it end Sunday evening.

ordered that this temporary arrangement last until June 1, 2014, and that a hearing would be set in the late spring or early summer "if necessary" to consider whether it would be appropriate to return to the week-on week-off schedule at that time.

At a status hearing in April 2014, Flynn said that he would accept a conversion of the temporary order into a permanent one if it would mean that he could "avoid further custody litigation." At that hearing and again at one in July, Hope agreed that the temporary order could be made permanent. The final child custody modification order, entered in August 2014, thus provides that Hope will have custody during the week and Flynn will have custody "three out of every four weekends, from Friday after school until Monday morning."

## B. Modification Of Child Support Order And Imputed Income

The October 2013 temporary custody order required that Flynn file a proposed child support order. Flynn's proposed order and supporting affidavit gave his total 2013 income as approximately $44,000. This was a drop in income from that on which the preexisting child support order was based; that 2011 order showed that he earned $59,660 annually while working for MTA.

Hope asked the court to impute income to Flynn based on his potential earnings.[4] She contended that Flynn had become voluntarily and unreasonably underemployed when he changed careers. Her proposal, for $58,000 in imputed income, was based on Flynn's earnings averaged over his last five years with MTA. She also contended that the order modifying child support should accurately reflect the superior court's October 2013 order that she have "primary physical custody."[5]

---

[4]    *See* Alaska R. Civ. P. 90.3(a)(4).

[5]    Civil Rule 90.3 provides different calculations for child support obligations depending on whether one parent has "primary physical custody" or the parents have
(continued...)

Flynn responded that his change in employment did not constitute voluntary underemployment. He also disputed Hope's assertion that the superior court had granted her "primary physical custody" in the October 2013 temporary custody order, because her custody time and his were 68% and 32% respectively, which by definition under Civil Rule 90.3 is "shared physical custody."[6]

The superior court referred the child support issues to a master, who held an evidentiary hearing in February 2014. Both parties testified. Following the hearing the master issued a written report and order in which he concluded that Flynn was "voluntarily and unreasonably underemployed" and that he should be imputed an annual income "at his previous total income of $59,660." The master reasoned that Flynn had "no compelling reason" to leave MTA, that it was uncertain whether he could ever obtain employment that paid as well or better than his job at MTA had, and that it was speculative whether his career move would ever benefit the children. The master observed that the apprenticeship program caused Flynn to spend less time with the children in the short term and reduced his ability to pay child support. But the master also agreed with Flynn's characterization of the parties' 68/32 custody arrangement as "shared custody" for purposes of the child support calculation.

Both parties filed objections to the master's report. Flynn challenged the master's conclusion that his career change was unreasonable. Hope again objected to basing a child support calculation on shared custody, insisting that she had primary

---

[5](...continued)
"shared, divided, [or] hybrid physical custody." *See* Alaska R. Civ. P. 90.3(a)-(b).

[6]     The rule defines "shared physical custody" as "children resid[ing] with that parent for a period specified in writing in the custody order of at least 30, but no more than 70, percent of the year, regardless of the status of legal custody." Alaska R. Civ. P. 90.3(f)(1).

physical custody because of the wording of the October 2013 temporary order. She contended that if the superior court "in fact modified the parties['] custody arrangement from 50/50 shared to 68/32[] shared, it did so despite [her] opposition . . . , and absent an evidentiary hearing."

Having reviewed the pleadings and listened to the audio record of the evidentiary hearing before the master, the superior court issued its order in July 2014. Disagreeing with the master, it concluded that Flynn's decision to change jobs, though voluntary, was "not unreasonable under the totality of circumstances." Further, in response to Hope's argument that she had been awarded primary physical custody, the superior court clarified that it had "in fact ordered 68/32 custody . . . and that it inaccurately used the word 'primary' in identifying that custody in its October 30, 2013 order."[7] It determined that the master correctly characterized the physical custody arrangement as "shared custody" for purposes of child support. Finally, in response to Hope's contention that the superior court should have held an evidentiary hearing before modifying custody, the superior court observed that not only was the initial modification temporary, but it was consistent with the parties' agreement, differing only on the specifics of Flynn's weekend visitation. It explained that Hope waived an evidentiary hearing both because she did not ask for one on visitation, the only contested issue, and because she agreed on the record that the temporary order be made permanent without further proceedings. The superior court accordingly calculated child support on a 68/32 shared custody basis, using incomes of approximately $44,000 and $27,000 for Flynn and Hope respectively.

---

[7] *See* Alaska R. Civ. P. 90.3(f)(2) ("A parent has primary physical custody . . . if the children reside with the other parent for a period specified in the custody order of less than 30 percent of the year.").

On appeal Hope argues that the superior court erred by (1) denying her motion for modification of physical custody without an evidentiary hearing; (2) granting Flynn's motion for temporary modification of physical custody, then converting it to a final order without an evidentiary hearing; and (3) refusing to impute income to Flynn for purposes of calculating child support.

Flynn did not participate in this appeal.

## III. STANDARDS OF REVIEW

To determine "whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances."[8] We affirm the superior court's denial of a hearing "if, in our independent judgment, 'the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing.' "[9]

"We will not reverse a superior court's custody decision unless the court has abused its discretion or the controlling factual findings are clearly erroneous."[10] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[11]

---

[8]     *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011).

[9]     *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998)).

[10]     *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008).

[11]     *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013) (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

"We review under an abuse of discretion standard the court's decision to impute income."[12] "The determination of imputed income is a finding of fact that we will overturn only if clearly erroneous."[13] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[14]

## IV. DISCUSSION

### A. The Superior Court Did Not Err When It Denied Hope's Motion To Modify Custody Without Holding An Evidentiary Hearing.

Before discussing the merits of Hope's arguments about custody, we note that she does not challenge any of the particulars of the final custody modification order, which granted her physical custody during the week and Flynn physical custody three out of every four weekends. Except for how Flynn's weekends were measured — which she does not appear to challenge on appeal[15] — the final custody order reflects essentially what Hope herself was seeking as a permanent modification. In short, Hope objects to the process while not taking issue with the result.

---

[12]     *Reilly v. Northrop*, 314 P.3d 1206, 1212 (Alaska 2013).

[13]     *O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003).

[14]     *Graham R. v. Jane S.*, 334 P.3d 688, 692 (Alaska 2014) (quoting *Ronny M.*, 303 P.3d at 399) (internal quotation marks omitted).

[15]     The final order defined Flynn's visitation weekends as "from Friday after school until Monday morning," whereas Hope had asked that they end "on Sunday evening at 5 [p.m.]." And the final order gave Flynn three weekends a month, whereas Hope had asked that he be given two and a half (the half weekend ending at Saturday noon). Hope also argued that Flynn was limited to three weekends a month regardless of whether a given month had five; the superior court labeled this contention as "almost frivolous" and clarified that Flynn was to receive three weekends out of every four.

We read Hope's arguments as focused on the different treatment of parents with "primary physical custody" and those with "shared physical custody" for purposes of calculating child support. Hope apparently contends that a different process on the modification motions would have resulted in an award to her of "primary physical custody" and therefore higher child support payments from Flynn. But since Hope does not provide any evidentiary support for the implication that a hearing could have resulted in Flynn receiving less than the 32% custody he was ultimately willing to accept, she gives us no basis on which to conclude that a reasonable result in this case could ever have been anything other than "shared custody" as defined in Civil Rule 90.3. Hope's custody-related arguments are thus arguably moot,[16] but we exercise our discretion to address them briefly.[17]

Hope first contends that the superior court erred when it decided the 2013 cross-motions to modify custody without a hearing. A motion to modify custody triggers a right to an evidentiary hearing only if the moving party "make[s] a prima facie showing of a substantial change in circumstances affecting the children's welfare."[18] A change in circumstances is unlikely to be substantial enough to "overcome our deep reluctance to shuttle children back and forth between parents" unless the change affects the

---

[16] *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) ("A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails.").

[17] *See Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (describing public interest exception to mootness doctrine but concluding that "the determination of whether to review a moot issue is left to this court's discretion").

[18] *Schuyler v. Briner*, 13 P.3d 738, 742 (Alaska 2000) (quoting *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999)) (internal quotation marks omitted).

children's welfare and "reflect[s] more than mere passage of time."[19]  "Because family law strives to create stability for children, courts should not encourage unnecessary hearings in custody cases, and we will affirm the superior court's denial of a custody hearing when 'it is plain that the facts alleged in the moving papers, even if established, would not warrant a change.' "[20]

Hope based her modification motion on the change in Flynn's work schedule when he left MTA and entered the apprenticeship program, which entailed stints of work on the North Slope that would "no longer permit[] a 50/50 physical custody schedule." Hope asked that the custody order be modified permanently to reflect the parties' actual arrangement.

The superior court concluded that the change in Flynn's work schedule did "not rise to the level of a [substantial] change in circumstances" because it "was a temporary change that led to a temporary agreement between the parties, and [Flynn] should not be penalized because he made that agreement." In support of this conclusion it cited *Morino v. Swayman*, in which we held that while "a de facto change with respect to visitation of a child may be a change of circumstances for the purpose of modifying decreed visitation[,] . . . experimental changes lasting only a few months should not qualify as a change in circumstances."[21] We observed in *Morino* that "[c]ustodial parents should have the flexibility to experiment with new visitation schedules without fearing

---

[19]     *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998).

[20]     *Schuyler*, 13 P.3d at 742  (footnote omitted) (quoting *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999)).

[21]     *Morino*, 970 P.2d at 429.

that every temporary change could be the basis for modifying visitation."[22] In *McLane v. Paul*, adopting some language from *Morino*'s dissent, we observed that a failure "to allow parents leeway to cooperate and experiment with custody" would, to the extent it discouraged parental agreement, "run[] counter to the goals of Alaska's family law and the needs of Alaska's children of divorce."[23]

The superior court in this case observed both that the new custody schedule was the product of parental agreement and that its duration was "entirely speculative": "[I]t is entirely unclear at this time what [Flynn's] work responsibilities might be once he completes the [apprenticeship] program." There is no dispute that the parties agreed to the new schedule, but Hope disputes that the change was temporary, noting that "the length of the temporary job change was at a minimum 4 months (more than a few) and potential[ly] 5 years (the length of the apprenticeship)."

We have reviewed the allegations that were before the superior court at the time it decided the motions without a hearing. Hope's motion, filed in August 2013, alleged that Flynn's apprenticeship would require him to "be absent for extended periods of time until he completes the 8,000 required hours." In response, Flynn asserted that his North Slope employment would end in October 2013 at the latest, at which point he would attend apprenticeship classes in Anchorage until December, then look for employment through his union in the spring. He asserted that the location of his new employment could not yet be known.

We agree with the superior court's conclusion that, based on both parties' allegations, the duration of their then-current arrangement was "entirely speculative":

---

[22]     *Id.*

[23]     189 P.3d 1039, 1043 (Alaska 2008) (alteration in original) (quoting *Morino*, 970 P.2d at 433 (Fabe, J., dissenting)).

both agreed that it could last a few months or it could last much longer.  It would not have promoted family stability or consistency of scheduling to modify the existing custody order to reflect what could, in a few months, prove to have been only a temporary change in circumstances.  Given also the parties' agreement to an experimental arrangement for dealing with their situation and the policy that such parental flexibility should be encouraged, the superior court did not err in concluding that Hope had failed to make a prima facie case for a permanent modification of custody.

### B. The Superior Court Did Not Err When It Granted Flynn's Temporary Motion To Modify Custody, Then Converted It To A Final Order.

Hope also contends that the superior court erred when it granted Flynn's temporary motion to modify custody, then converted the temporary order to a final and permanent one.  As noted above, the resulting schedule is largely the one both parties agreed to.  But Hope contends that (1) the temporary order awarded her "primary physical custody"; (2) conversion of the temporary order to a permanent one was a custody modification that occurred "without any best interest findings and without adequate hearing" and is invalid; and therefore (3) the temporary order, awarding her "primary physical custody," is the only valid one.

Hope's argument is without merit.  The superior court pointed out in its July 2014 order that its use of the term "primary physical custody" in the earlier order for temporary modification was inaccurate, "since it was inconsistent with the actual custody that was awarded":  by legal definition, the 68/32 custody arrangement in this

case was "shared physical custody."[24]  Hope does not explain why the superior court should be powerless to correct its misstatement.[25]

Furthermore, the superior court's conversion of the temporary order to a permanent one was done with both parties' agreement.   When granting the temporary order, the court observed that it could not yet tell whether it would be appropriate for the parties to revert to their 50/50 alternating-week schedule "in June, once the school year is over," so it would hold a hearing on that issue, "if necessary, in late spring or early summer."  A status hearing occurred in April 2014.  Flynn reported, through counsel, that while he had wanted to revert to the alternating-week custody schedule, he would "accept the existing order as a final order" if it would allow him to "avoid further custody litigation."  Hope agreed that the temporary order could be made final.  At a hearing in July, when the judge asked whether either party wanted to present additional evidence, both of them asked that he rule on the pleadings.  Flynn reiterated that he would not object if the interim custody order was made the final order; when his counsel proposed drafting the final order, Hope again agreed.

Having expressly agreed to entry of the permanent custody order without an evidentiary hearing, Hope waived any right she might otherwise have had to a hearing on that order.[26]

---

[24]     Civil Rule 90.3(f)(1) defines "shared physical custody" as when the child lives with each parent at least 30% of the time; here, Flynn's three weekends out of every four added up to 32%.

[25]     *See Donnybrook Bldg. Supply Co. v. Alaska Nat'l Bank of the North*, 736 P.2d 1147, 1148 n.2 (Alaska 1987) ("A trial court can correct its own mistakes before entry of judgment.").

[26]     *See Corbin v. Corbin*, 68 P.3d 1269, 1274 (Alaska 2003) (stating that party waives right to evidentiary hearing by failing to request one before court rules).

C.      **The Superior Court's Decision Not To Impute Income To Flynn Was Not An Abuse Of Discretion.**

Hope argues that the superior court erred when it rejected the master's recommendation that an income of $59,660 be imputed to Flynn. Hope contends that the master "provided [a] deeper analysis of the totality of the circumstances and provide[d] a stronger basis for imputing income than not[]" and that the master was in "a better position to assess credibility than the superior court." But a master's recommendations and conclusions of law are not binding upon the superior court, which is permitted to "adopt . . . , modify . . . , [or] reject [the report] in whole or in part."[27]

Whether a parent is unreasonably underemployed depends on the totality of the circumstances.[28] When a parent voluntarily changes to a lower-paying job, the court must consider "the nature of the changes and the reasons for the changes."[29] This "totality" analysis addresses concerns with "locking in" a parent in a particular job or field, as well as concerns that the children or the other parent will be burdened with financing the career change.[30] Accordingly, the totality analysis "include[s] such factors as whether the [parent's] reduced income is temporary, whether the change [in employment] is the result of economic factors or of purely personal choices, the

---

[27]      Alaska R. Civ. P. 53(d)(2).

[28]      *Reilly v. Northrop*, 314 P.3d 1206, 1213 (Alaska 2013).

[29]      *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987) (quoting *In re Marriage of Rome v. Rome*, 621 P.2d 1090, 1092 (Mont. 1981)), *overruled on other grounds by Nass v. Seaton*, 904 P.2d 412, 416 n.7 (Alaska 1995).

[30]      *Pugil v. Cogar*, 811 P.2d 1062, 1066 (Alaska 1991) (citing *Pattee*, 744 P.2d at 662) (reasoning that dilemma "between locking an obligor into a career and the burden that the obligor's career change places on the custodial parent and the child" can be resolved by considering all relevant circumstances).

children's needs, and the parents' needs and financial abilities."[31]  Also to be considered is "the extent to which the children will ultimately benefit from the change."[32]

The superior court in this case considered all the relevant factors and set out its factual findings.[33]  It found that Flynn's "decision was not made in bad faith or motivated by a desire to reduce his child support"; that what motivated him instead was that "his current career was at a dead end"; that Flynn expected ("but obviously cannot guarantee") that he would eventually earn the same amount or more "once his training is complete"; that he "has actively looked for and found employment while the [apprenticeship] classes are not in session, and he has made sure to collect unemployment while he [is] taking his classes," thus having "taken such steps as are possible to maximize his income while he is undergoing his training"; and that the "children have no particular needs" that will go unmet because of Flynn's career change, and thus are not being asked to finance it.  None of these findings are clearly erroneous, and on these facts we see no abuse of discretion in the superior court's decision not to impute income to Flynn for purposes of calculating child support.

## V.    CONCLUSION

The orders of the superior court are AFFIRMED.

---

[31]    *Barlow v. Thompson*, 221 P.3d 998, 1003 (Alaska 2009) (quoting *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008)) (internal quotation marks omitted).

[32]    *Olmstead v. Ziegler*, 42 P.3d 1102, 1106 (Alaska 2002)  (quoting Alaska R. Civ. P. 90.3 cmt. III.C) (internal quotation marks omitted) ("Thus, it is appropriate for the trial court to consider not only the career change, but also its potential impact on the child.");  *Richardson v. Kohlin*, 175 P.3d 43, 48-49 (Alaska 2008) (quoting Alaska R. Civ. P. 90.3, cmt. III.C).

[33]    The voluntariness of Flynn's job change is not disputed.