NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA C., | ) | |
| | ) | Supreme Court No. S-17006 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-08093 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MARCUS K., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1704 – November 28, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances:  Andrea C., pro se, Wolfeboro, New Hampshire, Appellant.  Notice of nonparticipation filed by Appellee Marcus K.

Before:  Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

A mother appeals a superior court order denying her motion to modify custody of her two sons, arguing that the court erred by determining there had not been a substantial change of circumstances justifying consideration of a modification.  She also contends that the court wrongfully failed to conduct a "best interests" analysis and to take into account one son's stated preference to live with her.  We see no error, and we affirm the superior court's decision.

---

\*       Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

Andrea C.[1] and Marcus K. divorced in 2005. They have two sons. At the time of the September 2017 custody hearing underlying this appeal, Daniel was 16 years old and Bryson was 14 years old; the boys were living with Marcus and his parents in Anchorage.

### A. Previous Custody Proceedings

In November 2012 the superior court entered the parties' most recent custody and visitation order. The order followed a custody investigation involving multiple interviews with the parties and reviews of written references provided by both parents, previous pleadings and motions, communications between the parties, and Daniel's and Bryson's medical and school records. The court granted Marcus sole legal and primary physical custody of the boys and granted Andrea seven consecutive weeks of summer visitation. Andrea appealed, and we affirmed the superior court's decision in *Andrea C. v. Marcus K.*[2]

### B. The Current Custody Dispute

After the November 2012 custody order, Andrea filed several motions to modify custody on the basis of changed circumstances. Each was denied. Andrea filed her most recent modification motion in May 2017, amending and replacing a September 2016 motion. She argued two grounds for determining that there had been a substantial change in circumstances warranting a modification of the parties' custody arrangement.

First, Andrea claimed that the boys were "still basically failing in school." Andrea attributed the boys' academic struggles in part to Marcus's health problems,

---

[1]     We abbreviate the parties' names and use pseudonyms for their children to protect the children's privacy.

[2]     355 P.3d 521 (Alaska 2015).

especially his previous stroke,[3] which she alleged had "an adverse effect on his ability to parent effectively."

Second, Andrea claimed that Marcus recently had committed an act of domestic violence when he kicked a barbecue grill that hit and injured Daniel.[4] She again linked this issue with Marcus's health, arguing that there was a correlation between his "strokes" and his "violent outbursts."

### 1. July 2017 and September 2017 evidentiary hearing

In response to Andrea's amended motion, the superior court conducted an evidentiary hearing in July and September 2017. The court heard testimony regarding the boys' grades and incidents when Marcus allegedly committed domestic violence.

### a. Academic performance

The court heard testimony about Daniel's and Bryson's academic performance from the academic dean and a counselor/teacher at the boys' school. The academic dean testified that Daniel and Bryson were doing "OK" academically and were "pretty average students." She felt that Daniel was "working to his potential" and that he was "on track for graduation." She said that although Daniel had failed one of his classes, he made up the course over the summer and would have been on track to graduate even had he not done so. She said that Bryson was doing "average" work, but she thought "he could probably do better." She noted that his attitude — not being "super focused on school" — was "very typical of a student his age."

---

[3] Marcus suffered a stroke in July 2015. Following the stroke, and after hearing testimony from Marcus and his physician, the superior court found in October 2015 that Marcus was "fully capable" of caring for Daniel and Bryson and that his medical issues did not rise to the level of a substantial change in circumstances.

[4] Domestic violence qualifies as "a substantial change of circumstances as a matter of law." *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017).

The dean also discussed actions that Marcus had taken to support the boys' academic success. These actions included accessing the school's student information system on a daily basis, calling the school with questions and concerns, enrolling the boys in a supplemental home-school program and a study-skills class, and obtaining a tutor for Daniel. She said that both Daniel and Bryson participated in team sports at the school and that there had been a few individual weeks in which they were academically ineligible to play in games or travel with their teams. She said that in those circumstances, Marcus took "appropriate action" to deal with the boys' grades. The dean said she could not think of "anything else" Marcus could be doing to help Daniel and Bryson in school. She said that Marcus was "very involved in the boys' education and very anxious to have them do well." She also stated that she was "not aware . . . one way or another" of Marcus's stroke having an impact on his ability to parent.

The counselor/teacher testified that Marcus and his parents were "very involved" in the boys' educations and that she wished all families were as involved. She said Marcus used the boys' love of sports to motivate them to improve their school performance. She said, for example, that Marcus had withdrawn Bryson from basketball due to his academic performance and had not allowed Daniel to play hockey for the same reason.[5] When asked explicitly about Marcus's stroke, she said that he was still "very involved" in the boys' education, despite his health problems.

### b. Domestic violence

The superior court also heard testimony and examined evidence regarding three alleged domestic violence incidents potentially warranting a finding of a change in circumstances: (1) in 2015 or 2016 Marcus allegedly "hit" Daniel; (2) in May 2016

---

[5] Andrea contradicted the counselor/teacher's testimony, claiming that Marcus does not "follow through" when he tells the boys that they will not be allowed to play hockey until their grades improve.

Marcus allegedly kicked a barbecue grill at Daniel; and (3) in May 2017 Marcus allegedly choked Bryson while Andrea was on the phone with Daniel.

The boys' counselor/teacher testified that sometime in 2015 or 2016, Daniel reported to her that he "thought" Marcus had "hit" him. Daniel later told her that he and Bryson were fighting with each other and, when trying to stop the fight, Marcus may have accidentally struck Daniel. Daniel told her that he was not afraid to go home and, a few days later, he told her that everything was fine at home. She said she had sent Daniel to the school nurse, who found no injuries. When asked about this incident, Marcus's father testified that he was "not aware" of Marcus hitting Daniel at any time.

Andrea alleged that in May 2016 Marcus kicked a barbecue grill at Daniel, hitting his elbow and causing it to swell. She testified that she learned about Daniel's injury on Mother's Day, the day after the injury occurred, when both Daniel and Bryson called her from a restaurant within a few minutes of each other. Andrea filed petitions for protective orders on behalf of both boys shortly thereafter; the court requested that the Office of Children's Services (OCS) investigate the allegations. OCS apparently concluded that the allegations were unsubstantiated "due to lack of evidence for alleged child maltreatment." The OCS report was not admitted into evidence during the hearing. Marcus testified about the incident, stating that, while trying to show Daniel how to remove water from the grill, Marcus tipped it over with his foot and part of the grill accidentally struck Daniel's elbow. Marcus's father confirmed this version of events.

Regarding the alleged choking incident, Andrea testified that in May 2017, while she was on the phone with Daniel, she heard Bryson yelling and "commotion" in the background. Daniel told her he would call her back and hung up the phone. Andrea talked to Bryson later in the day and said she could "tell by the tone of his voice" that something was wrong and that he could not talk freely because others were around. At the hearing Marcus denied that the incident had happened. Marcus's father testified that

he did not witness the alleged choking. Marcus's father said he had asked Marcus about the incident, and Marcus said that he had "held [Bryson's] chest" because Bryson was "throwing things" and having "a fit." Marcus's father also stated that there "is no corporal punishment" in the home.

### 2. October 2017 custody investigation report

On October 10, 2017, "[a]t [Andrea's] urging, and in light of contradicting testimony offered by the parties regarding new allegations of domestic violence by [Marcus]," the superior court appointed a custody investigator to interview Daniel and Bryson regarding "any violence by either parent during the past year." The custody investigation report was completed on October 25, 2017.

In interviews with the investigator, "[b]oth children confirmed [Marcus] ha[d] not been violent towards them." Daniel told the investigator that Marcus "had some difficulty managing his frustration right after he had a stroke" but that he became better at it over time. Daniel noted that Bryson had a habit of starting or escalating arguments with Marcus. Bryson acknowledged that he argues "a lot" with his father and that these arguments "tend to escalate to yelling." But Bryson also reported that Marcus was not violent toward him or Daniel. Bryson told the investigator that he "like[d] the idea" of living with Andrea because he would be able to play high school hockey and that he thought there would be "less yelling in [Andrea's] home."

Regarding the May 2017 incident in which Marcus allegedly choked Bryson, Daniel acknowledged that Bryson had told such a "story," but Daniel said it "never happened," and he knew this because he "watched the entire event that [Bryson] referenced as choking." Bryson told the investigator that Marcus had "grabbed [Bryson] by the shirt, held him back against a wall, and yelled at him," but he was not choked. Bryson said the incident occurred because he had been "joking" and told Marcus to "shut up"; this made Marcus "upset" and caused him to "flip[] a switch." The investigator

questioned in the report whether Bryson may "embellish[] his reporting of events when upset with a particular parent." The report concluded that "[i]t m[ight] be beneficial for [Marcus] to get some assistance to help him adjust his communication pattern with [Bryson]." The report contained no references to the grill incident or the hitting incident that Daniel had reported.

### 3. January 2018 order denying custody modification

Following the evidentiary hearing and the custody investigation report, in January 2018 the superior court denied Andrea's motion to modify custody. The court held that "no substantial change of circumstance ha[d] occurred to allow or warrant a modification of custody." Regarding Andrea's claim that the boys' academic performance constituted a change in circumstances, the court found that "the evidence demonstrates that the boys, for varying reasons, have had periods and areas of success and of struggle throughout their academic careers, and their recent performance in school does not represent a significant departure from their historical performance." The court also found "no credible evidence demonstrating that [Marcus] assaulted, or otherwise committed acts of domestic violence" against Daniel or Bryson.

Andrea appeals.

## III. STANDARD OF REVIEW

We review for abuse of discretion a superior court's determination whether the "moving party has proven a substantial change in circumstances" sufficient to warrant modifying a custody order.[6] "Whether the [superior] court's findings on domestic violence are supported by the record is a question of fact which we review for

---

[6]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016).

clear error."[7]

## IV.   DISCUSSION

Andrea's appeal raises two primary issues:  (1) whether the superior court abused its discretion by finding that Andrea did not demonstrate a substantial change in circumstances sufficient to warrant modifying the parties' custody arrangement, and (2) whether the superior court erred by not analyzing whether a change in custody was in Daniel's and Bryson's best interests.  We consider each issue in turn.

### A.      The Superior Court Did Not Abuse Its Discretion By Finding That There Was No Substantial Change In Circumstances.

"Modification of a custody determination is a two-step process:  first, 'the parent seeking modification must establish a significant change in circumstances affecting the children's best interests'; only then is a best interests analysis performed."[8] A change in circumstances sufficient to warrant modifying a custody order "must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[9] Because of the "deep reluctance [of courts] to shuttle children back and forth" a change is unlikely to be found sufficient to justify a custody modification unless it "affects the children's welfare and 'reflect[s] more than mere passage of time.' "[10]

---

[7]      *Bruce H.*, 407 P.3d at 436 (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1090 (Alaska 2015)).

[8]      *Abby D. v. Sue Y.*, 378 P.3d 388, 394 (Alaska 2016) (quoting *Hunter v. Conwell* (*Hunter II*), 276 P.3d 413, 419 (Alaska 2012)).

[9]      *Id.* (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 481-82 (Alaska 2012)).

[10]      *Collier*, 377 P.3d at 22 (quoting *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015)).

### 1. None of the superior court's prior orders found a substantial change in circumstances.

As the parent seeking a custody modification, Andrea had the burden of demonstrating a substantial change of circumstances.[11] Andrea argues that the superior court already found a substantial change in circumstances and that it erred by ignoring its prior findings in its most recent order. She cites two documents to support her argument.

First, Andrea quotes log notes from an October 2015 hearing in which the court made factual findings on the record before issuing an order denying her June 2015 motion to modify custody. The log notes read, "the decision not to move back to Alaska justifies a finding of substantial change of circumstances," and "[t]he court does find that [father's] medical event during the summer results in a substantial change in circumstances." But log notes are not evidence, and we prefer "[c]itations to hearing recordings or transcripts" when available.[12] Moreover these log notes were inaccurately transcribed, and the twice-omitted word "not" reverses each statement's meaning. The hearing recording reveals that Judge McKay actually stated, "[m]other's decision not to move back to Alaska does *not* rise to a substantial change in circumstances" and "[t]he court does *not* find that father's medical event during the summer results in a substantial change in circumstances." (Emphasis added.) Judge McKay's subsequent November 2015 order confirms the finding that Andrea "did *not* meet her burden of proving a substantial change in circumstance." (Emphasis added.)

Second, Andrea argues that the superior court found a substantial change in circumstances in November 2016 when it held that her allegations that Daniel and

---

[11] *Bruce H.*, 407 P.3d at 436.

[12] *See Haley B. v. State , Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16562, 2017 WL 4767710, at *4 n.12 (Alaska Oct. 19, 2017).

Bryson were "basically failing in school . . . . minimally support[ed] a request for an evidentiary hearing." But Judge McKay was merely ruling that Andrea had made the required prima facie showing to trigger her right to an evidentiary hearing, not that she had established a substantial change in circumstances.[13] Neither example Andrea cites supports her contention that the superior court already found that she had established a substantial change in circumstances. Andrea has failed to establish that the superior court's past findings were relevant to her most recent motion or that the court abused its discretion by not taking those findings into account.

> **2.     The superior court did not clearly err by finding no domestic violence incidents occurred.**

Andrea also alleges that the superior court erred by finding that Marcus did not commit acts of domestic violence against Daniel and Bryson. "Domestic violence" is defined in AS 18.66.990. For purposes of this case, the relevant portion of the statute provides that domestic violence is a "crime against the person under AS 11.41"[14] committed or attempted to be committed "by a household member against another household member."[15] Andrea alleges that some of Marcus's conduct toward Daniel and Bryson constituted assault in the fourth degree under AS 11.41.230. To establish that Marcus's conduct qualified as assault in the fourth degree, Andrea needed to show that he: (1) recklessly caused physical injury to the boys; (2) was criminally negligent in causing injury to them by means of a dangerous instrument; or (3) by words or conduct

---

[13]     *See Abby D.*, 378 P.3d at 394 ("A motion to modify custody triggers a right to an evidentiary hearing only if the moving party 'make[s] a prima facie showing of a substantial change in circumstances affecting the child[]'s welfare.' ") (quoting *Hope P.*, 355 P.3d at 565).

[14]     AS 18.66.990(3)(A).

[15]     AS 18.66.990(3).

placed the boys in fear of imminent physical injury.[16] A person commits assault "recklessly" when that person "is aware of and consciously disregards a substantial and unjustifiable risk that [physical injury] will occur."[17]

There is ample support in the record for the superior court's determination that "the allegations reported in briefing and during the parties' hearing have resulted from misunderstandings and/or mis-reports." The court could reasonably have found that Marcus did not hit Daniel, or that it was an accident. The court could also reasonably have found that Marcus's and his father's accounts of the barbecue grill incident were credible and that there was no evidence Marcus "consciously disregard[ed] a substantial and unjustifiable risk" that Daniel would be injured when Marcus tipped the grill over with his foot.[18] And there is ample support in the record to conclude that Bryson was not choked, based on his own statements to the custody investigator and on the testimony of Marcus and Marcus's father. The superior court's finding that there was "no credible evidence demonstrating that [Marcus] . . . committed acts of domestic violence" is not clearly erroneous.

### 3. The superior court did not abuse its discretion by limiting the custody investigation's scope.

Andrea also alleges that the superior court abused its discretion by directing the custody investigator to question Daniel and Bryson about domestic violence that had occurred only in the last year. We conclude there was a reasonable basis for the court to decide it needed further fact-finding regarding only more recent alleged domestic violence incidents. The barbecue grill incident had been investigated by OCS in 2016

---

[16]    AS 11.41.230.

[17]    AS 11.81.900(a)(3).

[18]    *Cf. id.*

and found to be unsubstantiated. The custody investigator spoke with the boys about the alleged May 2017 choking incident. The only other alleged domestic violence incident before the court was reported by the counselor/teacher whotestified that Daniel had told her in 2015 or 2016 that Marcus may have hit him, but that he was not sure. Daniel later told her that Marcus had not, in fact, hit him, but was merely breaking up a fight between Daniel and his brother. Daniel further expressed regret about raising the issue. The school nurse had found no injuries. In light of the evidence before the superior court, it was not an abuse of discretion to direct the custody investigator to question Daniel and Bryson only about "violence by either parent during the past year."

**B.  The Superior Court Did Not Err By Not Conducting A "Best Interests" Analysis.**

Andrea contends that the superior court erred by not conducting an analysis of whether a change in custody would be in Daniel's and Bryson's best interests. But a superior court must first find a substantial change in circumstances before analyzing whether a change in custody is in a child's best interests.[19] Because the superior court did not abuse its discretion by finding that there was no change in circumstances, it also did not err by declining to conduct a "best interests" analysis.

Andrea also argues that the superior court erred by not considering Bryson's preference to live with her, and she cites *Sheffield v. Sheffield*[20] for the proposition that "where both parents are capable and neither living situation would be detrimental to the child, an older child's preference should be honored." "[T]he child's preference" is one of the nine statutory factors a court must take into account in

---

[19]  *See Abby D.*, 378 P.3d at 394.

[20]  265 P.3d 332, 336 (Alaska 2011).

determining a child's best interests.[21] But as discussed above, no "best interests" analysis was required in this case. And Andrea's citation to *Sheffield* is inapposite.[22] In *Sheffield* the superior court first found that there had been a substantial change in circumstances before concluding that the 14-year-old child's preference should be given significant weight.[23] Here there was no such finding.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's decision.

---

[21] AS 25.24.150(c)(3).

[22] 265 P.3d at 334-36.

[23] *Id.*