*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ABBY D., | ) | |
| | ) | Supreme Court No. S-16049 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-14-00010 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SUE Y. and | ) | |
| TODD Y., | ) | No. 7125 - September 2, 2016 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, William B. Carey, Judge.

Appearances:  Michael P. Heiser, Ketchikan, for Appellant. Leif Thompson, Leif Thompson Law Office, Ketchikan, for Appellees.

Before: Stowers, Chief Justice, Winfree,  Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

The superior court granted sole legal and primary physical custody of a child to her grandparents, following a trial at which the court found by clear and convincing evidence that leaving the child in her mother's custody would be clearly detrimental to the child's welfare.  Nine months later the mother moved to modify custody, attesting by affidavit that she had improved her life in a number of ways and

had accomplished goals the court had set for her. She also argued that the court's grant of custody following trial had been only temporary, and she was thus entitled to a biological-parent preference and the court could modify custody without proof of a substantial change in circumstances. The court denied her motion without a hearing, holding both that its custody decree was intended to be final and that the mother failed to show the substantial change in circumstances necessary to entitle her to an evidentiary hearing.

We agree with the superior court's holdings, and we therefore affirm its denial of the mother's modification motion without a hearing.

## II. FACTS AND PROCEEDINGS

### A. Facts

Abby D.'s daughter Pam was born in July 2011.[1] The child's father was never involved in her life and is not a party to these proceedings.

Abby has had mental health issues since she was a child. In January 2014 she overdosed on one of her medications and was unconscious for two or three days. At the custody trial she admitted she had taken more than the prescribed amount of the drug "on an impulse decision" but denied it was a suicide attempt; she later described the incident as "a medical reaction to the pills [she] was taking."

As a consequence of this incident, however, Abby's mother Sue Y. and Sue's husband Todd Y. petitioned for guardianship and eventual custody of Pam. The evidence adduced during the course of the custody proceedings demonstrated that other aspects of Abby's life were also difficult. She had changed homes frequently over the ten years preceding the custody trial; she had also endured periods of homelessness and spent time in a women's shelter. The homes she did have were described by others as

---

[1] We use pseudonyms to protect the family's privacy.

uninhabitable and unsanitary. She was the victim of domestic violence, and a friend filed a domestic violence petition against her.

Abby also had a problem with marijuana dependence. She smoked marijuana "every 2 to three hours" but refused to describe herself as a heavy user because she intended to quit, though she admitted "struggl[ing] a little bit on that." The Office of Children's Services (OCS) opened an investigation in May 2012 after Pam tested positive for marijuana, but she tested negative several months later, and two OCS caseworkers testified at trial they had no concerns about Abby's parenting. Abby testified that Pam "is not in the presence of marijuana smoke or paraphernalia," but she acknowledged that her usual practice was to smoke outside or in the bathroom. When the court questioned her about her use of marijuana while taking care of Pam, she clearly limited her concern to Pam's exposure to smoke; she rejected the court's apparent concern about whether she could be a proper caretaker while under the influence, arguing that her marijuana use would only be a problem if it meant she was "not able to care for [her] child," that it would be more dangerous for her to smoke somewhere else while "leaving [Pam] four flights above ground," and that smoking marijuana is "not illegal."

The evidence showed that Pam, like her mother, had a difficult life. She suffered from microcephaly, failure to thrive, joint laxity, slow hair growth, and a heart murmur. Pam's pediatrician testified that these problems can have a variety of causes. She testified that microcephaly and failure to thrive are most commonly genetic; two "of the thousands of reasons that [they] can happen" are abuse or neglect, but some "[c]hildren are just small. . . . As [with] any statistical graph, there are people who are at the low end and [people who are] at the high end."

Still, the pediatrician testified that because of the potential for abuse or neglect she "keep[s] a close eye on any child who has failure to thrive or microcephaly.

And [that is] why . . . we were concerned about it enough to send [Pam] to pediatric specialists." She testified that Abby "has always seemed very involved and very concerned about [Pam]'s medical problems and her medical progress," and that the only evidence of abuse or neglect she heard was Sue's allegations. In fact, two of Pam's specialists cleared her while she was still in Abby's custody. The superior court accordingly found that Abby "does seem to take appropriate measures to deal with the health issues that the little girl has."

**B.    Proceedings**

The first proceeding relevant to this case was a hearing on Sue and Todd's petition to be appointed as Pam's guardians. After taking testimony from Abby and a family friend, the superior court concluded that while there was "a lot of evidence that would be extremely relevant in a custody matter," guardianship did not seem to be an appropriate step.

Two interim custody hearings followed, at which the court heard further testimony about Abby's drug use, mental health issues, and alleged neglect of her parenting responsibilities. At the end of the first hearing the court ordered Abby to quit smoking marijuana because quitting was "in [her] child's best . . . interests." The court awarded visitation to Abby's mother Sue because that was also in Pam's best interests, though the court said it could not find by clear and convincing evidence that Abby's custody of Pam was clearly detrimental to Pam's welfare — but "it[ was] not that far off."

At the end of the second interim custody hearing the court again expressed its concern about Abby's drug use around Pam, but it left interim custody with Abby, finding that Sue and Todd still had not "shown by clear and convincing evidence at [that] point that [Abby] having custody of the child would be clearly detrimental to the welfare

of the child." The court found that visitation with Sue remained in Pam's best interests, and it scheduled trial for September 2014.

In March 2014, between the second interim custody hearing and the trial, Abby moved to Washington with Pam. The move violated a provision in the superior court's domestic relations standing order which prohibited taking the child out of Alaska. After a hearing, which Abby did not attend, the court issued a warrant for physical custody of Pam and granted interim custody to Sue and Todd. When Abby refused to cede the child to Sue's custody, the court found Abby in contempt of court. Sue and Todd took custody of Pam after Abby returned to Alaska in June.

The court held the custody trial in September 2014. At the close of trial the court found by clear and convincing evidence that it would be detrimental to Pam's welfare for her to remain in Abby's custody. The court issued a child custody decree awarding legal and physical custody of Pam to Sue and Todd and a child support order requiring Abby to pay Sue and Todd $50 per month.

Nine months later Abby filed a motion to modify custody. Her motion asserted first that the court's grant of custody to Sue and Todd following trial had been only temporary and that she had met the court's stated prerequisites for a reversion of custody to her — prerequisites she summarized as "get[ting] a mental health evaluation and follow[ing] all recommendations, and also show[ing] proof of sobriety." She also argued that because of a substantial change in her life's circumstances, it would be in Pam's best interests to be returned to her custody. The court denied her motion without a hearing, reasoning that its custody decree was intended to be permanent and that Abby failed to show any substantial change in circumstances justifying its modification; the court observed further that Abby had not, in fact, shown that she had satisfied the

conditions it had advised her to meet before it would "even *consider* modifying custody."[2]

Abby appeals the denial of her motion to modify custody.

## III.   STANDARDS OF REVIEW

"Whether the court applied the correct standard in a custody determination is a question of law we review de novo."[3]

"To determine 'whether a party is entitled to a hearing on a motion to modify custody, we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances.' "[4] "In so doing, we take the moving party's allegations as true."[5] We use our independent judgment to review the denial of a modification motion without a hearing; we will affirm the denial if "the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[6]

---

[2]     Emphasis in original.

[3]     *Elton H. v. Naomi R.*, 119 P.3d 969, 973 (Alaska 2005) (quoting *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001)).

[4]     *Hope P. v. Flynn G.*, 355 P.3d 559, 564 (Alaska 2015) (quoting *Collier v. Harris*, 261 P.3d 397, 405 (Alaska 2011)).

[5]     *Collier*, 261 P.3d at 405 (citing *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998)).

[6]     *Bagby v. Bagby*, 250 P.3d 1127, 1128 (Alaska 2011) (quoting *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999)).

## IV. DISCUSSION

In its initial resolution of a custody dispute between a biological parent and any third party, including a grandparent, the court must prefer the biological parent.[7] To overcome that preference "the non-parent must show that it clearly would be detrimental to the child['s welfare] to permit the parent to have custody," that the parent is unfit, or that the parent has abandoned the child.[8] A third party seeking either visitation or custody bears the burden of proving one of these circumstances by clear and convincing evidence.[9] But "[w]hen the non-parent has already been granted permanent custody, the parental preference drops out in subsequent modification proceedings."[10] At that point any modification motion is subject to the usual test of AS 25.20.110(a), meaning that the custody decree will be modified only "if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[11]

In this case Abby argues that the superior court awarded Sue and Todd only temporary custody at the close of the September 2014 trial, and therefore Abby did not need to show a change in circumstances as required by AS 25.20.110(a) in order to support a modification of that award. She contends further that because Sue and Todd's custody was only temporary, she remained entitled to the *Turner* preference for the

---

[7] *Turner v. Pannick*, 540 P.2d 1051, 1053-54 (Alaska 1975). We refer to this preference as the *Turner* preference.

[8] *Id.* at 1054-55.

[9] *Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004).

[10] *Id.* at 1085 n.32 (citing *C.R.B.*, 959 P.2d 380).

[11] Hunter v. Conwell (*Hunter I*), 219 P.3d 191, 196 (Alaska 2009) (quoting AS 25.20.110(a)).

biological parent. Alternatively, Abby argues that even if the court's award was for permanent custody, her modification motion showed a substantial change in circumstances that entitled her to an evidentiary hearing.

### A. The Superior Court's Order Following Trial Was A Final Custody Decree.

Abby's argument that the superior court's grant of custody to Sue and Todd was only temporary is based in part on some of the court's oral remarks at the close of trial: that its order was "not written in stone" and that granting Sue and Todd custody "doesn't mean it has to happen forever."[12]  From this Abby argues that when the court denied her motion to modify custody it used the wrong standard, because she did not need to show a substantial change in circumstances in order to effect a change in merely temporary custody. She argues that this case is governed instead by the proposition that "[p]arents can regain custody [from non-parents] in a temporary-custody case without showing a substantial change in circumstances, and can rely on the *Turner* preference."[13] But because we conclude that the court's custody decree was indeed permanent and final, Abby was required to show a substantial change in circumstances before she was entitled to a hearing.

In its written order denying Abby's modification motion, the superior court strongly rejected her argument that the custody decree was temporary:

---

[12]     Abby also argues that the court must have granted Sue and Todd only temporary custody because "[i]t is . . . abundantly clear that the evidence presented at trial does not support a finding of permanent custody with the grandparents."  This argument is in essence an appeal from the final decree, but the time to appeal from the decree is long passed. *See* Alaska Rule of Appellate Procedure 204(a)(1) ("The notice of appeal shall be filed within 30 days . . . .").  Because Abby did not appeal the custody decree, we address here only her motion to modify the decree, not whether the decree was sufficiently supported in the first place.

[13]     *C.R.B.*, 959 P.2d at 381 n.12.

The court absolutely did not state in its oral findings or anywhere else that the "custody decision was temporary." The court never used that word and had no subjective intent to have its order be construed as anything but a standard custody order subject to modification under the provisions of AS 25.20.110 and the case law interpreting that statute. In stating in its oral findings that nothing is written in stone, the court was simply acknowledging the fact that *any* custody order is subject to modification based on a showing of a substantial change in circumstances that requires the modification and that the modification is in the best interests of the child.[14]

The superior court is in the best position to explain what it subjectively intended by its custody decree, and its subjective intent is wholly consistent with the record.

At the first two hearings the superior court expressly identified the proceedings as "interim custody" hearings in its introductory comments and when talking about scheduling their continuation. At the close of the second hearing the court was equally explicit about the issue it was deciding: "[A]s far as interim custody is concerned, [Abby] will have interim custody." The court ordered the parties to propose a visitation schedule "for now until our trial in September."

In its oral remarks at the close of trial the court awarded sole legal and primary physical custody to Sue and Todd and noted that it was also making "the other finding required under *Evans v. McTaggart*," a case both parties had invoked repeatedly during the interim-custody phase of the proceedings as governing the ultimate issue of whether custody could be awarded to a non-parent.[15] The court's written findings of fact and conclusions of law, and its custody decree, reiterated that sole legal and primary physical custody was awarded to Sue and Todd, with Abby given limited supervised

---

[14] Emphasis in original.

[15] 88 P.3d at 1082-86.

visitation. The court ordered child support at the same time and issued a separate child support order plainly marked "Final." There is nothing about these orders that implies they are merely interim.

Abby nonetheless argues that the superior court's orders were ambiguous, and she points to a case in which we determined that an ambiguous custody decree was temporary. In that case, *Britt v. Britt*, the trial court granted custody of a child to the paternal grandparents but at the same time "made a sua sponte order that the custody question be placed on the calendar six months later 'to see if there's been any changes in the status of either parent or the grandparents.' "[16] At the subsequent hearing the mother argued that the earlier grant of custody had been temporary and she was still entitled to the parental preference; we ultimately agreed, reversing the trial court.[17] We held that the custody order was temporary because "the court indicated a desire to review the initial decision . . . without the necessity of any [motion to modify custody]" and because the trial court had failed to give the mother the benefit of the *Turner* biological-parent preference in its initial custody award.[18]

In this case the superior court did not expressly withhold judgment or schedule further proceedings on custody. Its advice to Abby about the improvements she would have to show before it would even "consider a change in custody" did not guarantee her another hearing.[19] Unlike the mother in *Britt*, Abby was therefore required

---

[16]      567 P.2d 308, 309 (Alaska 1977).

[17]      *Id.* at 309-11.

[18]      *Id.* at 310.

[19]      The superior court said, "[Abby] needs to get herself in the care of a good psychologist or psychiatrist. She needs to get a mental health evaluation and follow all recommendations. . . . She'll need to show proof of sobriety for a period of at least six

(continued...)

to, and did, move for a modification of custody in order to raise the arguments she now makes on appeal. And unlike the trial court in *Britt*, the superior court here applied the appropriate burden of proof in its initial determination of custody as between the parent and the non-parent, giving Abby the benefit of the *Turner* biological-parent preference; it would be antithetical to the child's best interests to apply it again in modification proceedings.[20] The superior court's observation that the award of custody to Sue and Todd was "not written in stone" and "doesn't mean it has to happen forever" simply echoed our observation in *Britt* that "[a]ll custody awards are subject to motions for modification."[21]

Abby suggests a different policy consideration that distinguishes her case. Although she had private counsel through the interim-hearing stage of the proceedings and is represented again on appeal, she did not have an attorney at trial. She

---

[19](...continued)
months before I can consider changing . . . custody . . . ." Abby argues that "[t]here would be no need to set such conditions for a parent to resume custody if the award of custody was permanent." In denying Abby's motion to modify custody, the superior court wrote that its "intent in making this statement was to encourage [Abby] to make some major and necessary changes in her life." Again, consistent with the court's stated intent, its remarks do not appear to be limitations on the finality of the custody decree but rather wholly appropriate advice about the minimum changes Abby would have to make before the court would even consider a motion to modify that decree.

[20]     *See Evans*, 88 P.3d at 1085 n.32 ("When the non-parent has already been granted permanent custody, the parental preference drops out in subsequent modification proceedings." (citing *C.R.B. v. C.C.*, 959 P.2d 375, 380 (Alaska 1998)); *see also C.R.B.*, 959 P.2d at 380 ("Having once protected the parent's right to custody, at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability in its care and living arrangements by modifying those arrangements more readily than in a parent-parent case.").

[21]     567 P.2d at 310.

appropriately invokes our direction for custody cases involving pro se litigants that "[c]ourts should make clear whether a grant of nonparental custody is temporary or permanent, and ensure that they carefully warn a parent that a hearing may have the latter result."[22] But as explained above, the superior court did make it clear throughout the course of the proceedings — from interim hearing to interim hearing to trial and decree — that permanent custody would be decided at the trial in September 2014. And Abby does not suggest she would have done anything differently had she been given more specific warnings of the trial's significance.

In sum, we see no reason to question the superior court's stated intention that its September 2014 award of custody to Sue and Todd be permanent and final, subject — like all such decrees — to a properly supported motion to modify custody pursuant to AS 25.20.110(a).

**B.**     **The Superior Court Did Not Err In Denying Abby's Motion To Modify Custody Without An Evidentiary Hearing Because She Did Not Show A Substantial Change Of Circumstances Affecting Pam's Best Interests.**

"Modification of a custody determination is a two-step process: first, 'the parent seeking modification must establish a significant change in circumstances affecting the children's best interests'; only then is a best interests analysis performed."[23] "A motion to modify custody triggers a right to an evidentiary hearing only if the moving party 'make[s] a prima facie showing of a substantial change in circumstances affecting

---

[22]     *C.R.B.*, 959 P.2d at 381 n.12.

[23]     *Hunter v. Conwell* (*Hunter II*), 276 P.3d 413, 419 (Alaska 2012) (quoting *Hunter I*, 219 P.3d 191, 196 (Alaska 2009)); *see also Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012) ("As a threshold matter, a party seeking a modification of custody must make a prima facie showing that a substantial change in circumstances has occurred.").

the child[]'s welfare.' "[24]  "The required change in circumstance must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[25]  "A change in circumstances is unlikely to be substantial enough to 'overcome our deep reluctance to shuttle children back and forth . . .' unless the change affects the child[]'s welfare and 'reflect[s] more than mere passage of time.' "[26]

Abby argues that the superior court erred in denying her motion to modify custody without holding an evidentiary hearing because positive developments in her life, taken in the aggregate, amounted to a substantial change in circumstances.  She lists the following changes:  (1) she complied with the court's requirements for sobriety and a mental health assessment; (2) she is in a "serious relationship with her fiancé"; (3) she is pregnant, and it is in Pam's best interest to become part of the new family unit; (4) Abby's new home would allow Pam to have her own bedroom; (5) Abby is attending college to become a nurse and is maintaining a high grade-point average; (6) she has a job as an administrative assistant; and (7) Sue and Todd have interfered with her visitation rights.  The superior court concluded that these alleged changes were too short-term as yet to be deemed substantial.  In order to decide whether this was error, and

---

[24]     *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015) (first alteration in original) (quoting *Schuyler v. Briner*, 13 P.3d 738, 742 (Alaska 2000)).

[25]     *Heather W.*, 274 P.3d at 481-82 (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[26]     *Hope P.*, 355 P.3d at 565 (first alteration in original) (quoting *C.R.B.*, 959 P.2d at 381); *see also Starkweather v. Curritt*, 636 P.2d 1181, 1183 (Alaska 1981) ("The fact that [the movant] is as capable of raising the children as [the custodial parent] is not enough to warrant a change in custody.").

because the superior court denied Abby's motion to modify without a hearing, we must determine whether Abby "alleged facts that, taken as true, could warrant modification."[27]

### 1. Abby's mental health assessment and sobriety do not constitute a substantial change that affects Pam's best interests.

Abby did get a mental health assessment approximately five months after the custody decree, as the superior court had advised her to do if she wanted to seek a modification of custody. The superior court found incredible the assessment's conclusion that Abby "did not meet the criteria for any mental health disorders," finding that the conclusion "flies in the face of the observations this court was able to make over the course of two highly contentious hearings in this matter" and "appears based entirely on [Abby's] self-reporting," which "also raises concerns about . . . [the assessment's] conclusions." But credibility determinations were not properly a part of the superior court's decision whether to grant Abby a hearing; it was required to accept Abby's evidence as true.[28] We accordingly assume that the assessment was accurate.[29]

But regardless of the assessment's accuracy, it reflects no change "relative to the facts and circumstances that existed at the time of the prior custody order."[30] The

---

[27]     *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999).

[28]     The superior court may deny a hearing on a motion to modify custody only "if it considers [the] motion and finds it plain that the facts alleged in the moving papers, *even if established*, would not warrant a change in custody." *Schuyler*, 13 P.3d at 741 (alteration in original) (emphasis added) (quoting *C.R.B.*, 959 P.2d at 378).

[29]     Although the superior court faulted the assessment for relying "entirely on [Abby's] self-reporting," the assessment did include, for example, facts reported by Abby's mother that Abby claimed not to remember. It noted the variety of mental health issues with which Abby has been diagnosed, her alleged suicide attempt, and her drug dependency, and it characterized Abby as "high risk."

[30]     *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000).

act of getting the assessment was not itself a change in circumstances. Assuming the accuracy of its conclusion that Abby suffered from no mental health disorders — potentially resolving the superior court's concern at trial that she had "some mental health issues" — that did not alleviate the court's central concern: that "[Abby] doesn't see, or won't see the terrible harm that she's inflicted on this child, due to her own conduct," particularly her marijuana dependency.

Abby's motion for modification asserted that she was not using marijuana, and in her supporting affidavit she said that she had not "and will not consume or use any controlled substances, including marijuana, during [her] pregnancy." Setting aside this statement's equivocation as to whether her sobriety would last past the birth of her child, her exhibits showed that she had not yet had the six months' sobriety the court indicated was essential "before [it could] consider changing the custody aspect of this case." The mental health assessment from just four months earlier quoted her as saying, consistent with her trial testimony, "I do smoke [marijuana] like I smoke cigarettes" and "I don't get stoned. I smoke every 2 to three hours."

Assuming she had quit immediately following the assessment and thus had four months of sobriety at the time she made her motion, the amount of time at issue is close to that in *Gratrix v. Gratrix.*[31] There the superior court based a change in custody on the father's "recent control of his drinking problems" — in the four months between the initial decree and modification motion — and his remarriage just five days before he filed the motion.[32] But we reversed, explaining that those "were not proper grounds

---

[31] 652 P.2d 76, 84 (Alaska 1982).

[32] *Id.* at 78, 83.

-15- 7125

upon which to base a change of custody, especially given the short duration of this improved lifestyle."[33]

We distinguished *Gratrix* in *Nichols v. Mandelin*.[34] In *Nichols* the mother presented evidence of her "overall maturation, her changed marital status, her full time employment [for at least two years], and her *sustained* control of a former drinking problem."[35] The mother attended Alcoholics Anonymous and had undergone a 30-day alcoholism treatment program; she testified that she had since consumed alcohol but not to the point of intoxication, and a custody investigator opined that alcohol was no longer a problem for her.[36] Here, although Abby's mental health assessment noted that "[s]he does appear to have a dependence on [m]arijuana that may benefit from ongoing evaluation," her motion showed no commitment to a process that would control her marijuana dependence during Pam's childhood.

The superior court in this case made particularly clear its concern with Abby's "ability to provide care for a child when [she is] under the influence of . . . marijuana." Four months of sobriety and a commitment to abstain during her current pregnancy did not address that legitimate concern or establish a substantial change in circumstances.

### 2. Abby's other life changes do not constitute a substantial change affecting Pam's best interests.

Abby's motion to modify custody asserted a variety of other life changes that she argues together amounted to a substantial change in circumstances. But even

---

[33]    *Id.* at 83.

[34]    790 P.2d 1367, 1372 & n.15 (Alaska 1990).

[35]    *Id.* at 1372 (emphasis added) (footnotes omitted).

[36]    *Id.* at 1368.

viewed in the light most favorable to Abby, we agree that they are not "significant enough to warrant the disruption inherent in changing a child's custody."[37] While each of the asserted changes may mark improvements in Abby's life, the significance of their effect on Pam's best interests is not so apparent.[38]

In *Starkweather v. Curritt* we affirmed the trial court's denial of a mother's motion to modify custody where she "had married two more times . . . and had two more children," and "[t]he evidence also indicated that [she] is an excellent custodian for the children she currently is raising and that she is capable of giving the other two children [whose custody was at issue] the same level of care."[39] Though the mother's life and parenting capability had clearly improved, there was insufficient evidence that it was in the children's best interests to change the status quo.[40]

Abby's motion had less support than the motion we found to have been properly denied in *Starkweather*, as it failed to show that her new life was stable or that her progress was sustainable in the long term. A new spouse, a new house, an expanding family, a new job, and a new course of study may all be positive steps for a parent, but whether they amount to a substantial change in circumstances depends on their effect on

---

[37] *Collier v. Harris*, 261 P.3d 397, 407-09 (Alaska 2011) (affirming the denial of a mother's motion to modify shared custody where "she [had] graduated from college, gained full-time employment, and started evening classes to work toward her master's degree" since the prior custody order).

[38] *See Gratrix*, 652 P.2d at 83 ("[M]ere improvement in the position of one of the parties is not sufficient to justify a change in custody." (citing *Nichols v. Nichols*, 516 P.2d 732, 736 (Alaska 1973))).

[39] 636 P.2d 1181, 1182 (Alaska 1981).

[40] *Id.* at 1182-83.

the child's best interests, which cannot be gauged only in the short term; otherwise a child could be shuttled back and forth at each milestone in a parent's life.[41]

For example, Abby did not present evidence that Pam would be better off in her custody because of her relationship with her new fiancé. In fact, the superior court wrote in its order denying her motion that her fiancé's posts on social media "reflect[ed] exactly the indignant and tone-deaf self-righteousness expressed by [Abby] in her previous testimony at the hearings in 2014" and could thus be seriously detrimental to Pam's relationship with her grandmother. Abby did not deny the evidence but only questioned how Sue and Todd obtained it.

The fact that Abby had a new home also failed to address the court's core concerns about her housing, which related not to whether Pam could have her own bedroom (a positive development Abby mentioned in her affidavit) but rather stability, cleanliness, and the people Abby associated with. And with regard to employment, Abby's affidavit again showed positive developments — a three-month job followed by another that was in its sixth month when the motion was filed — but short-term jobs had always been a part of her history.

In short, Abby's evidence presented, at best, a possible future with her in which Pam's best interests would be served equally well as they are now while Pam lives with Sue and Todd. Missing was evidence that the changes were sustainable over the long term and would affect Pam's best interests in such a way as to favor a modification of the status quo. And most importantly, the changes failed to allay the superior court's primary concern about Abby's ability to care for Pam while under the influence of

---

[41] *See Nichols*, 516 P.2d at 736 ("[W]e are unable to see how the welfare of the child would be improved or better served" because of a "showing that [the non-custodial mother] had remarried and had a home in which to care for the child." (quoting *Laughton v. Laughton*, 259 P.2d 1093, 1102 (Wyo. 1953))).

marijuana. Absent proof of six months' sobriety, the court's reasonable precondition was simply not met. We agree that the various changes in Abby's life failed to show the substantial change in circumstances necessary to support a modification of custody.

### 3. Sue and Todd's alleged interference with Abby's visitation is not a substantial change in circumstances that affects Pam's best interests.

Abby avers that Sue and Todd have interfered with her visitation rights, and again we accept her allegations as true for purposes of determining whether they entitled her to a hearing. Abby's allegations are serious and might warrant a modification to the visitation order, but her argument about custody is misplaced. In her brief she quotes *Hermosillo v. Hermosillo* for the proposition that "[a]ctions by a custodial parent which substantially interfere with the noncustodial parent's visitation rights '[are] sufficient to constitute a change [in circumstances].' "[42] But the rest of the sentence clarifies that such interference " 'may justify and require a modification of the *visitation order*,' if such modification is in the best interest of the child."[43] "The change in circumstances required for modification of visitation rights, moreover, need not rise to the level sufficient to warrant a change of custody."[44] Here, Abby sought to modify custody, not visitation.

Abby correctly notes that a custodial parent's interference with telephone visitation is a serious issue that may rise to the level of a substantial change in

---

[42] 797 P.2d 1206, 1209 (Alaska 1990) (second alteration in original) (quoting *H. v. H.*, 632 S.W.2d 432, 434 (Mo. App. 1982)).

[43] *Id.* (emphasis added) (quoting *H.*, 632 S.W.2d at 434).

[44] *Id.*

circumstances,[45] but generally, "a superior court may not modify custody solely because the custodial parent does not comply with orders of the court; it must still conduct a best interests analysis."[46] The superior court in this case found both that Abby was an unfit parent and that being in her custody would be clearly detrimental to Pam's welfare. With these issues outstanding, Sue's alleged interference with Abby's visitation rights cannot justify a modification of custody.

### 4. Taken in the aggregate, Abby's allegations did not show a substantial change in circumstances.

We are required to review "multiple changed circumstances to determine whether, in the aggregate, the changes were sufficient to justify a reevaluation of a custody decree."[47] We have done so here, and we conclude that, even in the aggregate, Abby's asserted changes do not amount to a substantial change in circumstances that affects Pam's best interests.

## V.  CONCLUSION

We AFFIRM the superior court's denial of Abby's motion to modify custody.

---

[45]  *See Hunter II*, 276 P.3d 413, 421 (Alaska 2012) (affirming the superior court's denial of a motion to modify where "[i]t [was] clear that telephonic communication . . . continues to be problematic" but conflicting testimony showed that some missed calls were outside of court-ordered times and make-up calls were sometimes made); *Kelly v. Joseph*, 46 P.3d 1014, 1017-18 (Alaska 2002) (affirming the superior court's custody modification where it examined telephone records and found "the level of telephone communication . . . woefully inadequate").

[46]  *Kelly*, 46 P.3d at 1018 (citing *Platz v. Aramburo*, 17 P.3d 65, 71 (Alaska 2001)).

[47]  *Long v. Long*, 816 P.2d 145, 152 (Alaska 1991).