NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ABBY D., | ) |
| | ) Supreme Court No. S-18356 |
| Appellant, | ) |
| | ) Superior Court No. 1KE-14-00010 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| SUE Y. and TODD Y., | ) AND JUDGMENT[*] |
| | ) |
| Appellees. | ) No. 1971 – June 14, 2023 |
| | ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, William B. Carey, Judge.

Appearances: Michael P. Heiser, Ketchikan, for Appellant. Leif Thompson, Leif Thompson Law Office, Ketchikan, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

Grandparents have maintained sole legal custody and primary physical custody of their granddaughter since 2014, with the child's mother having supervised visitation. In 2021 the mother sought to modify visitation, requesting more frequent and unsupervised visits. The superior court granted the mother's request in part, allowing her up to four days of unsupervised visitation when she is in the grandparents'

---

[*]    Entered under Alaska Appellate Rule 214.

locale, but denied the mother's request for unsupervised visitation at her home out of state.

The mother appeals, arguing that unsupervised visitation at her home is in the child's best interests, that the court provided no basis for the four-day limitation on unsupervised visits in the grandparents' locale, and that the court erred in failing to articulate a plan to achieve unsupervised visitation in or near her home. We see no error or abuse of discretion, and thus affirm the visitation order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

We have previously decided a case involving the same parties.[1] Many of the facts of that case are also relevant here. We therefore include a partial history of both cases.

Abby D. has a daughter Pam who was 10 years old at the time of this appeal. Pam's father has not been involved in Pam's life nor in any of the previous custody or visitation actions. Sue Y. is Abby's mother and Pam's grandmother. Todd Y. is Sue's husband and Abby's stepfather. Pam has lived with Sue and Todd in Ketchikan since they were awarded custody in 2014. Abby has lived in Washington and Oregon during that time.

Pam has significant needs that require stability and support. During Pam's early childhood she was diagnosed with microcephaly, failure to thrive, joint laxity, slow hair growth, and a heart murmur.[2] Now, at 10 years old, Pam has been diagnosed with attention deficit hyperactivity disorder and disruptive mood dysregulation. These conditions cause Pam to have difficulty interacting with others, following directions and rules, regulating her mood, coping with people who are late for appointments, and

---

[1]    *See Abby D. v. Sue Y.*, 378 P.3d 388 (Alaska 2016). As in that case, we use pseudonyms to protect the family's privacy.

[2]    *Id.* at 390.

maintaining positive teacher and peer interactions. Pam receives "wraparound" services from a mental health center, which includes individual, group, and family therapy services, as well as behavioral support services both in school and in the community. These support services are provided year-round. Pam is further supported through an Individual Education Plan with her school district.

### 1. Abby's 2014 and 2015 custody cases

In September 2014 Sue and Todd were awarded legal and physical custody of Pam. Abby had been struggling with mental health challenges, housing instability, domestic violence, and substance abuse. The 2014 superior court found by the heightened evidentiary burden of clear and convincing evidence that Abby's continued custody of Pam would be detrimental to Pam's welfare.[3] The court noted that throughout the proceedings Abby had been "belligerent and argumentative with the court to a very unreasonable degree," that she was "just in denial about so many aspects of her own behavior," and that she "[did not] see, or won't see the terrible harm that she's inflicted on this child due to her own conduct." The court ordered that Abby could have supervised in-person visitation with Pam, as well as open but reasonable telephonic and video visitation.

Less than a year later Abby filed a motion to modify custody. Abby argued that she had improved many aspects of her life and should be permitted to resume custody of Pam. Abby alleged that she was in a stable relationship, had stable housing, was pursuing education to improve her employment prospects, was no longer using any controlled substances, and was attending college. The court denied Abby's

---

[3] *See Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004) ("[I]n order to overcome the parental preference a non-parent must show by clear and convincing evidence that the parent is unfit or that the welfare of the child requires the child to be in the custody of the non-parent.").

request, expressing skepticism about the changes Abby claimed to have made and noting several important things that had not changed since its 2014 decision.

We affirmed the denial of Abby's motion to modify custody in *Abby D. v. Sue Y.*[4] We held that Abby's life changes, while commendable, did not meet the threshold of a substantial change affecting the *child's* best interests.[5] We pointed out that while "the asserted changes may mark improvements in Abby's life, the significance of their effect on Pam's best interests [was] not so apparent."[6]

### 2. Abby's 2021 request to modify visitation

In April 2021 Abby moved to modify the visitation order that had been in place since 2014.[7] In this motion Abby requested unsupervised visitation "at other times in Ketchikan," and later in the motion, "at all other times in Ketchikan." She also asked for unsupervised visitation in Oregon, where she lived at the time, for four weeks in the summer and during Pam's winter break from school.[8]

Abby argued that modifying visitation was in Pam's best interests because Abby could now provide a "loving, stable, and safe family environment." Abby asserted that due to "significant longstanding changes" in her lifestyle she could now better care for Pam. These changes included receiving an associate's degree in nursing after 5 years of college, and having full-time employment as a nurse, a stable relationship, and stable housing. Abby also argued that increased visitation was now

---

[4] *Abby D.*, 378 P.3d 388.

[5] *Id*. at 395-97.

[6] *Id*. at 396.

[7] This motion did not include a request to disturb custody.

[8] During the pendency of the motion Abby moved out of her then-partner's house in Oregon to Washington to live with her cousin. We therefore reference unsupervised visitation in Washington even though the original motion requested unsupervised visitation in Oregon.

essential in light of her recent diagnosis with multiple sclerosis, and to help facilitate a relationship between Pam and her half-brother Scotty, who was born in 2015.

Abby also asserted that under our decision in *Yelena R. v. George R.*,[9] the superior court was required to either grant unsupervised visitation or to define a specific plan by which she could achieve unsupervised visitation.[10]  She further argued under *Yelena R.* that any plan to regain unsupervised visitation "cannot be left to the discretion of [Sue and Todd]," and that the 2014 custody and visitation order did exactly that.

Sue and Todd opposed Abby's motion.  They contended that Abby was not cooperating in proving that she had a stable life situation, was still using marijuana during in-person visits with Pam, and was currently engaged in another "heated and contentious custody case" with Scotty's father.  Sue and Todd also alleged that Pam showed "regression" after visits with Abby.  This included "bedwetting, sucking her thumb, talking like a baby and other behaviors such as acting clingy or pretending to be a cat."  They further asserted that Pam had exhibited increased difficulty since Abby announced her most recent in-person visit, which included lying to her teachers, telling a therapist she had "found a dead body of an adult in the woods," and becoming "somewhat defiant at school."

### B.    Proceedings

The superior court held an evidentiary hearing on Abby's motion.  Abby generally testified that she wanted to improve and deepen her relationship with Pam, and that thanks to her improved life circumstances she was now able to do so.  Abby also testified that despite her history of animosity with Sue, she did not think it would be good to take away Pam's relationship with her grandparents.

Regarding allegations of ongoing substance use, Abby testified that she did not "abuse marijuana" but that she did use it "quite often" and that she had a

---

[9]    326 P.3d 989 (Alaska 2014).

[10]    *Id.* 1002-03.

prescription for it. She testified that she had "never used marijuana in front of [her] daughter" nor been "high while visiting [Pam]." On cross-examination Abby admitted using marijuana in the morning on the last day of her visit with Pam in 2019. She maintained, however, that she was not intoxicated by the time she met up with Pam. She also generally testified that she was able to tell when she was sober, and that she was not around Pam or Scotty when intoxicated. The court questioned how Abby knew whether she was sober, and Abby responded that she used her own judgment.

Abby then testified about her relationship with Scotty's father, Greg. She admitted that Scotty's father had been a binge drinker and had committed multiple acts of domestic violence against her. She acknowledged that in 2015 she had testified that this relationship would offer a "stable and satisfactory environment" for Pam, and that, upon reflection, she was glad that the court "shut that down." She also explained that she did not currently have custody of Scotty because an Oregon court had determined that his father would better facilitate a relationship between Scotty and his grandparents than Abby would. Finally, Abby testified about her own mental health struggles. She testified that she had been diagnosed with dissociative identity disorder (DID) but that it did not impact her ability to care for Scotty or Pam. She stated that there is no medication for DID that she was able to take. She also testified that she was prescribed and taking both marijuana and Adderall.

Sue testified that she did not oppose unsupervised visitation in Ketchikan for "two hours here and there." However, both Sue and Todd were strongly opposed to Pam travelling out of state for several weeks for unsupervised visits with Abby. Their opposition was rooted primarily in their concerns about Pam's mental health coupled with Abby's history of instability and poor judgment. Sue provided details about Pam's current treatment needs and the level of structure Pam required. Todd affirmed that the support services Pam received in Ketchikan were "excellent" and that they have significantly improved Pam's life. The testimony established that losing the structure and support team that had been built in Ketchikan would be "devastating" to Pam, that

adherence to strict schedules is very important, and that Pam can often easily become restless, defiant, argumentative, or very upset. Todd was concerned that at this point being with Abby and "a bunch of strangers" would negatively impact Pam's mental health and cause her to "shut down." Sue was also worried about Abby's use of marijuana and the history of animosity between herself and Abby.

Additional testimony was taken from an employee of Pam's therapeutic service provider. He testified that a break in Pam's therapy for 30 days or more would normally lead to discharge or a referral to a provider in the area where Pam was. In addition, if a child was out of state telephonic therapy could not be provided due to state licensing requirements.

After the evidentiary hearing the superior court granted Abby unsupervised visitation for up to four days per week any time she was in Ketchikan. The court also granted Abby unsupervised telephonic or video visitation with Pam two to three times per week, for up to a half hour each visit. The court denied Abby's request for unsupervised visitation in Washington.

Abby now appeals and raises three points: first, that the court abused its discretion in determining that unsupervised visitation in Washington was not in Pam's best interests; second, that the court abused its discretion in limiting Abby's unsupervised visitation in Ketchikan to four days per week; and third, that the court erred in not specifying a plan by which Abby can achieve her requested unsupervised visitation.

## III.  STANDARD OF REVIEW

"The trial court has broad discretion in child custody matters, and its decision 'will be set aside only if the entire record demonstrates that the controlling

findings of fact are clearly erroneous or that the trial court abused its discretion.' "[11] "A finding of fact is clearly erroneous when this court is left with a definite and firm conviction that the trial court has made a mistake."[12] "Abuse of discretion is established if the court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[13] We give " 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[14]

We review visitation orders for abuse of discretion.[15] However, whether the court made the required findings to support supervised visitation is a question of law, which we review de novo.[16]

## IV.    DISCUSSION

### A.    The Superior Court Was Within Its Discretion To Deny Unsupervised Visitation Away From Ketchikan.

Abby contends that the superior court abused its discretion by denying her request for unsupervised visitation at her home in Washington. We disagree. The court denied Abby's request based on well-supported concerns about Pam's mental health needs, as well as Abby's continued lack of stability. The court explained Pam had

---

[11]    *Joy B. v. Everett B.*, 451 P.3d 365, 368 (Alaska 2019) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[12]    *Id.*

[13]    *Id.*

[14]    *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[15]    *Yelena R. v. George R.*, 326 P.3d 989, 996 (Alaska 2014) (citing *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978)).

[16]    *Id.* at 1002 (citing *J.F.E. v. J.A.S.*, 930 P.2d 409, 413 (Alaska 1996)).

significant needs requiring "stability of a kind [Abby] still does not offer." Underlying this assessment were the court's serious concerns regarding Abby's stability in "her personal relationships (including domestic violence on the part of partners), judgment, mental health (PTSD, and other issues), and substance use (primarily marijuana, which she apparently continues to consume on a daily basis)." The court further noted "serious issues between [Sue and Abby]. They have difficulty communicating and, according to [Sue], don't really talk except about [Pam]." The court reasonably concluded that "[t]he broken relationships, the moving around, the continued regular marijuana use, and the hostility [Abby] still feels for her mother may have abated somewhat, but not to the degree that the best interests of the child require modification to allow such visitation."

Abby disputes the superior court's decision, arguing that unsupervised time with her in Washington will further Pam's best interests. But none of Abby's arguments address the court's well-founded concerns about what is best for Pam. Abby's request would require Pam to travel for one to four weeks to a home she is unfamiliar with, in a place she does not know, with people she has never met, while simultaneously separating her from significant behavioral health services that she uses several times per week and that she could lose indefinitely if away for the requested visitation. The court's concerns regarding how Pam would react to such visitation, the trouble Sue and Abby might have coordinating such visitation, and its ultimate determination that the requested visitation was not in Pam's best interests are well supported by the record. It is understandable that Abby wants to maximize her time with Pam, especially in light of her recent medical diagnosis. But Abby's desire to strengthen her relationship with Pam does not override the court's valid concerns about Pam's mental health and the impact out-of-state unsupervised visitation might have.

Abby also argues that the superior court improperly considered or disproportionately weighed claims related to domestic violence, her own mental health issues, her substance use, and her hostility toward Sue. Again, we disagree. The court

properly considered each of these issues in light of significant historical concerns, and focused on the impact these challenges could have on Pam's current well-being if the requested visitation were granted. The court explained its ongoing concerns about Abby's credibility and judgment, which were supported by multiple inconsistencies in Abby's testimony, as well as recent examples of concerning behavior by Abby.

For example, during the 2014 custody hearings Abby testified openly about her mental health struggles, including depression and bi-polar disorder. But in the 2015 custody modification action she provided a mental health assessment asserting that she had no mental health disorders and that she should regain custody of Pam. And during the most recent proceedings Abby asserted that she had been diagnosed with DID, but provided no information about her treatment other than that she was unable to take any medicine for DID, while simultaneously asserting that DID has no impact on her ability to care for Pam. The court previously expressed "great concerns" about Abby's mental health and its impact on Pam, and Abby's most recent testimony regarding her mental health warrants the court's ongoing concern.

Similarly, in 2014 Abby asserted that she was not a heavy marijuana user and that in any event her marijuana use had no impact on her ability to care for Pam. In her 2015 assessment she admitted to heavy use. And in 2021 Abby asserted that she did not "abuse marijuana" while simultaneously admitting that she used it "quite often." She also recently asserted that she has "never" been high while visiting Pam but later conceded that she used marijuana the morning of a visit with Pam in 2019. Since 2014 the court has repeatedly expressed concern to Abby about her marijuana use and its prior demonstrable impact on Pam. The court has also characterized her testimony minimizing her marijuana use as "highly questionable." Particularly given significant historical difficulties in this case stemming from Abby's marijuana use and its impact on Pam, Abby's recent testimony about her continued use reasonably supported the court's ongoing concern.

Finally, in 2015 Abby asserted that her then-partner Greg would provide a stable and satisfactory environment for Pam. Now Abby concedes that Greg was a binge drinker who perpetrated multiple acts of domestic violence against her. This inconsistency further underscores the court's questioning of Abby's stability and judgment.

The extensive and long-developed record in this case supports the superior court's ongoing concerns related to Abby's mental health, substance use, and stability, as well as its continued questions regarding her credibility, and we will not reweigh the evidence. Ultimately, the court appropriately considered factors relevant to Pam's best interests and was well within its broad discretion when it denied Abby's request for unsupervised visitation in Washington.

**B.     The Superior Court Was Within Its Discretion To Limit Visitation In Ketchikan.**

The superior court granted, in part, Abby's request for unsupervised visitation in Ketchikan. In doing so the court limited the visitation to "up to four days per week any time [Abby] travels to Ketchikan." Abby now argues that her motion requested unsupervised visitation every day she is in Ketchikan. She asserts that the four-day limit is not in Pam's best interests, and that the court provided no basis for this limitation.

As an initial matter, we note that Abby's motion to modify visitation was ambiguous as to how much unsupervised visitation she was seeking during periods she would be in Ketchikan. She alternatively requested such visitation "at other times" or "at *all* other times," and did not specify any particular duration. In addition, during closing argument Abby did not clearly request unsupervised visitation every single day she was in Ketchikan. Instead, Abby made several vague statements that visitation had been "worked out" between the parties.

The schedule that the parties "worked out" for unsupervised visitation in December 2021 was three consecutive overnight visits starting at 6:00 p.m. and ending

the following morning, roughly equivalent to or less than the four days the court ultimately allowed. Given this record, it is difficult to say the court abused its discretion in granting the visitation it did. Moreover, given Abby's failure to make a clear request of the court, she arguably waived this point.[17]

Even had Abby made a clear visitation request below, we would still affirm the superior court's visitation order. As discussed above, Pam has special needs including an "extreme need for routine" which requires consistent support, a regimented schedule, and regular mental health services. And for the various reasons already stated, the court was wary of Abby's self-perception regarding her stability, mental health, and substance use. Despite these concerns, the court recognized Abby's improvements and the importance of facilitating a closer mother-daughter relationship. Abby was therefore granted substantial unsupervised visitation as compared to the 2014 order allowing none. Limiting this visitation to four days per week was not an abuse of discretion.

### C. No Plan To Achieve Unsupervised Visitation Was Required In This Case.

We held in *Yelena R. v. George R.* that "when a court orders supervised visitation [it] ordinarily should 'specify a plan by which unsupervised visitation can be achieved.' "[18] The plan "may not delegate authority to impose a visitation restriction to one of the parties" nor may it leave to one party the power to decide when or if unsupervised visitation will end.[19] We further directed that "the superior court should . . . create an appropriate roadmap potentially leading to unsupervised

---

[17] *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) ("Arguments raised for the first time on appeal are generally waived.").

[18] *Yelena R.*, 326 P.3d at 1003 (quoting *Monette v. Hoff*, 958 P.2d 434, 437 (Alaska 1998)).

[19] *Id*. (citing *Misyura v. Misyura*, 242 P.3d 1037, 1041-42 (Alaska 2010)).

visitation."[20]   "The plan may include periodic hearings, advice of professional counselors, a gradual reduction in supervision as long as some condition is met, or any number of other options, but it may not be left to the discretion of one of the parents."[21]

Abby now argues that the superior court failed to specify a plan to achieve unsupervised visitation in Washington. Abby also argues that because the court placed a four-day restriction on unsupervised visitation in Ketchikan, it was required to specify a plan to achieve unsupervised visitation for the "entire time [Abby] travels to Ketchikan." But in arguing these points, Abby misreads our precedent.

Our mandate in *Yelena R.* involved a parent who had no unsupervised visitation.[22]  This case is different. Abby has been granted up to four days of unsupervised visitation during time periods that she visits Ketchikan. This is a significant change in her visitation schedule. *Yelena R.* does not stand for the notion that a superior court must provide a detailed roadmap to achieve the specific *type or amount* of unsupervised visitation preferred by a parent. Instead, it directs a court to inform a parent about how to achieve *some level* of unsupervised visitation.

Second, as discussed above, the court's analysis and decision were primarily based on Pam's need for stability. The primary reasons the court denied unsupervised visitation away from Ketchikan relate to issues not entirely within Abby's control. As such, it would be difficult for the court to anticipate what Abby could do to achieve unsupervised visitation away from Ketchikan. Even if the court were able to anticipate and devise such a plan, there is no guarantee that Pam's best interests would support unsupervised visitation away from Ketchikan once Abby had completed the plan. This case is distinguishable from *Yelena R.* in that the appropriateness of

---

[20]   *Id.*

[21]   *Id.*

[22]   *Id.* at 996.

unsupervised visitation away from Ketchikan is primarily dependent on Pam's needs and development, as opposed to discrete actions Abby can take.

Third, we find it significant that despite her notable life improvements Abby has not consistently met the 2014 court's guidance regarding what she needed to do before the court would consider modifying custody or visitation. The 2014 court directed Abby to fully address her mental health issues, to address her marijuana use or abuse, and to demonstrate at least six months of sobriety. During the parties' recent litigation about visitation Abby testified that she has several mental health diagnoses but did not indicate that she was actively pursuing treatment. In fact, Abby provided almost no information about mental health treatment beyond asserting that there was "no medication" for DID, and that it did not impact her ability to parent. [23]

Similarly, contrary to demonstrating extended sobriety, Abby admits that she still uses marijuana "quite often," and that she is able to use her own judgment to determine when she is sober.[24] Again, given the history of this case, it was reasonable for the superior court to question Abby's ability to make that sort of judgment.[25] Indeed,

---

[23] As mentioned above, during the 2015 custody modification action Abby asserted that she had obtained a mental health evaluation and at that time did "not meet the criteria for any mental health disorders." The superior court found this claim incredible as both based entirely on Abby's self-reporting, and inconsistent with Abby's own testimony about her mental health. The court found that Abby had not meaningfully engaged in mental health treatment.

[24] We do note that Abby has stated that she has a prescription for marijuana. However, Abby's history of behavior in this case, particularly as related to marijuana use, made it reasonable for the superior court to skeptically view any claim Abby made about drug use and her ability to both evaluate her own level of impairment and parent while intoxicated.

[25] The superior court has previously characterized Abby's testimony and statements regarding her marijuana use as "defiant" and "cavalier," and found that Abby had not "taken seriously at all [the court's] stated concerns about her marijuana use and its possible effect on [Pam]."

there is evidence that as recently as 2019 Abby used marijuana prior to visitation with Pam. Given Abby's apparent failure to consistently engage with the court's prior guidance for regaining unsupervised time with Pam, we can hardly conclude that the court erred by not providing her *additional* guidance.

We do note that there is some tension between the court's encouragement that the parties "work towards" greater visitation and our mandate in *Yelena R.* that visitation should not be left to the discretion of the parties.[26] However, given the record as a whole, the court's suggestion does not improperly place visitation within the discretion of Sue or Todd. Rather, we view the court's comments as encouraging the parties to "work towards" a relationship and situation in which increased visitation between Abby and Pam will serve Pam's best interests.

## V.    CONCLUSION

For the above reasons, we AFFIRM the superior court's visitation order.

---

[26]    *Yelena R.*, 326 P.3d at 1003.